In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1143

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

5443 SUFFIELD TERRACE, SKOKIE, ILLINOIS,

*Defendant.*

APPEAL OF:

RICHARD S. CONNORS.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1883—**Robert W. Gettleman**, *Judge.*

ARGUED NOVEMBER 6, 2009—DECIDED JUNE 9, 2010

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Appellant Richard S. Connors operated a Cuban cigar smuggling and distribution business from at least 1996 through 1999. He eventually was convicted of several crimes related to this business. *See United States v. Connors*, 441 F.3d 527 (7th Cir. 2006) (upholding his conviction on appeal). The government

filed an action seeking civil forfeiture of Connors's home, arguing that Connors used the home to facilitate his illegal business and that the home was purchased with proceeds traceable to the illegal business. The district court denied Connors's motion to dismiss based on his argument that the statute of limitations had run on the government's civil forfeiture action. The district court then granted the government's motion for summary judgment on both the facilitation and proceeds theories, and ordered that the home be forfeited to the United States. We affirm.

## I. BACKGROUND

United States Customs officials stopped Connors on April 7, 1996, as he attempted to smuggle 1150 Cuban cigars into the United States from Canada. The officials confiscated the cigars and Connors's passport. Undeterred, Connors continued to travel to Cuba over the next three years on numerous occasions to smuggle cigars into the United States and sell them. In March 1997, local police found Cuban cigars in Connors's home, located at 5443 Suffield Terrace in Skokie, Illinois. The following day, March 15, 1997, Skokie police turned over to U.S. Customs officials the cigars that they found at Connors's home. Connors's escapades continued through 1999, when in late October U.S. Customs officials seized 850 Cuban cigars from Connors's home. A jury convicted Connors of smuggling Cuban cigars into the United States, conspiring to smuggle cigars into the United States, making a false statement on a passport application, and violating the

Trading With The Enemy Act, 50 App. U.S.C. §§ 5(b)(1), 16. We have already affirmed Connors's conviction. *See Connors*, 441 F.3d 527. The question before us now is whether he should also lose his house.

The government filed this civil forfeiture action on March 14, 2002, just one day shy of five years after Skokie police turned over the cigars they seized from Connors's house. The government argued that the house was subject to forfeiture under two theories: first, that the house was paid for, at least in part, with proceeds from Connors's illegal cigar business; and second, that Connors used the house to facilitate his illegal cigar business, subjecting the house to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 19 U.S.C. § 1595a(A), respectively. Connors filed a motion to dismiss, arguing that the statute of limitations began to run on April 7, 1996, when the government first discovered he was smuggling cigars into the United States. The district court denied his motion, holding that when Skokie police turned over the seized cigars to federal officials on March 15, 1997, it restarted the clock on the statute of limitations. The district court granted the government's motion for summary judgment. The district court denied Connors's motion for reconsideration and ordered the house forfeited. This appeal followed.

## II. ANALYSIS

Connors appeals the district court's denial of his motion to dismiss and its granting of the government's motion for summary judgment. We address each decision in turn.

*A.  Statute of Limitations*

To avoid running afoul of the statute of limitations, the government had two windows within which to file its civil forfeiture action: "within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later . . . ." 19 U.S.C. § 1621. The government first discovered that Connors was using his house as part of his smuggling operation in March 1997 but did not file this civil forfeiture action until March 2002, so it cannot rely on the two-year limitation. Whether the government's action was still timely filed within the five-year limitation depends on which particular event constitutes § 1621's "alleged offense."

Connors argues that the "alleged offense" is the operation of a cigar smuggling business in general, which the government first discovered on April 7, 1996, when U.S. Customs officials stopped him at the Canadian border and seized his cigars. The government argues that the "alleged offense" is not the enterprise, but the specific instances of smuggling, one of which the government discovered on March 15, 1997, when the Skokie police turned over cigars seized from Connors's house.

The district court found that although the April 1996 seizure constituted an alleged offense, the March 1997 discovery of additional smuggled cigars constituted a "fresh alleged offense," and the statute of limitations therefore reset and began to run from that later date. We review *de novo* the district court's denial of a motion to

dismiss based on the statute of limitations. *Middleton v. City of Chicago*, 578 F.3d 655, 657 (7th Cir. 2009).

Section 1621 does not itself define the term "alleged offense." Whatever question there may have been about the meaning of the pre-CAFRA statute,[1] the meaning of alleged offense in § 1621 is unambiguous now. The reference in that section to the "alleged offense" clearly means the alleged offense that gives rise to the civil forfeiture action. When there are multiple, distinct underlying crimes that independently could support forfeiture of the same property, nothing in the plain language of § 1621 bars a court from adjudicating a forfeiture action as long as at least one alleged offense is not time-barred, even if the statute of limitations has run on the remainder of the underlying crimes. Section 1621's reference to "the" alleged offense does not mean there can be only one alleged offense, but instead is intended to specify which alleged offense is being used as the basis for the civil forfeiture action.

---

[1] Prior to 2000, § 1621 included only the five-year statute of limitations; Congress added the additional two-year limitation when it passed the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). Without a specific reference to the time that officials discovered the property's involvement, courts disagreed about when an alleged offense was discovered. *See United States v. 5443 Suffield Terrace, Skokie, Illinois*, 209 F. Supp. 2d 919, 921 (N.D. Ill. 2002) (noting the Sixth, Eighth, and Ninth Circuits found that the statute of limitations ran from the time the underlying offense was discovered, whereas the Eleventh Circuit held that the statute of limitations ran from the time the property's connection with the crime was discovered).

We agree with the district court that the Skokie police turning over the cigars on March 15, 1997, was a new "alleged offense" for purposes of § 1621. Here, the government's civil forfeiture action is based not on Connors's attempted smuggling of cigars into the country in April 1996, but on the discovery of smuggled cigars in his house in March 1997 and October 1999. Because the government filed its complaint in this case within five years of those alleged offenses, the district court correctly denied Connors's motion to dismiss based on the statute of limitations.

In his appeal, Connors mischaracterizes the district court's holding. The district court correctly concluded that the weight of authority supports the notion that the five-year statute of limitations begins to run from the date of discovery of the underlying criminal offense rather than when the government discovers the property's involvement. *See 5443 Suffield Terrace*, 209 F. Supp. 2d at 921-22 (discussing case law). However, the district court went on to hold not that the attempted smuggling on April 7, 1996, was *the* alleged offense, but instead was *an* alleged offense; the turning over of the additional cigars on March 15, 1997, was also an alleged offense—or a "fresh alleged offense"—on which the government could base its civil forfeiture action.

Connors forfeited his house not because he operated a cigar smuggling business in general, but because the government discovered on March 15, 1997, that he had recently smuggled cigars into the country. Whether the government could or should have discovered after April 7,

1996, but before March 15, 1997, that Connors was using his house to facilitate his smuggling business or could not afford to pay his mortgage without ill-gotten proceeds is quite beside the point. Connors put his home at risk of being forfeited anew when he elected to smuggle cigars into the country after having already been stopped once at the border by government officials. He did so again when he smuggled additional cigars that were discovered in 1999.

Connors cites the Sixth Circuit's decision in *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491 (6th Cir. 1998) in support of his position. In *$515,060*, government officials seized the currency from Virginia Hurst's home on October 17, 1989. Hurst was convicted of conspiracy to conduct an illegal gambling business and conducting an illegal gambling business. The government filed its civil forfeiture action on March 14, 1994, one year after Hurst's last conviction for conducting an illegal gambling business. *Id.* at 495. The district court held that the forfeiture action was time-barred by the five-year statute of limitations because the government had heard testimony before a grand jury in the fall of 1988 that linked Hurst to the illegal gambling operations under investigation, meaning that the forfeiture action must have been filed sometime prior to the fall of 1993. *Id.* at 502-03. The Sixth Circuit held that the statute of limitation included a "known or should have known" standard, *id.* at 502 (*citing United States v. James Daniel Good Property*, 971 F.2d 1376, 1381 (9th Cir. 1992)), meaning "an offense is discovered when the Government discovers or possesses the means to discover the alleged

wrong, whichever occurs first," *id.* The court expressly rejected the government's argument that the money in jeopardy came from a recent violation of the gambling laws which had reset the clock: "The statute of limitations does not run from the date of a particular violation, but from the date of 'discovery' of an offense. The Government cannot disregard its discovery of earlier occurring offenses in preference for later offenses which would produce a more favorable timeline." *Id.* at 502-03. The Sixth Circuit rested its conclusion principally on its understanding of the word "discovery." It bolstered its conclusion by emphasizing that "[s]tatutes of limitations are statutes of repose," with one of their principal purposes being to put the adversary on notice. *Id.* at 503.

*$515,060* is neither binding on this court nor applicable to this case. The alleged offense in *$515,060* was the operation of a gambling business—a single, continuing offense—whereas here Connors committed multiple, albeit related, offenses. Although it is convenient to refer to Connors's many exploits as a cigar-smuggling business or enterprise, Connors in fact committed many separate offenses. That he was also charged with and convicted of conspiracy does not change this. There can be multiple crimes committed within a conspiracy, so the mere presence of a conspiracy charge does not automatically lump all separate offenses together. As discussed above, each time Connors committed a new crime by smuggling illicit cigars into the country, he re-exposed his house to the risk of forfeiture. Further, our decision does not conflict with the conceptualization of statutes of limitations as statutes of repose. Connors has received the

repose he deserves: the government cannot seek for-feiture of his house based on his April 1996 failed smug-gling because it failed to file its forfeiture action within five years of that date. That Connors should be entitled to rest easy regarding his subsequent crimes is an absur-dity not supported by the plain language of 19 U.S.C. § 1621 or common sense.

We affirm the district court's denial of Connors's motion to dismiss.

### B.  Income Deficiency

The district court granted summary judgement on the government's theory that the house was paid for at least partly with proceeds from Connors's cigar smuggling business. The district court found that Connors had deposited far more money into the bank account from which he made the mortgage payments than could be attributable to his legitimate sources of income. The district court also noted that Connors did not produce any evidence of additional legitimate sources of income.

On appeal, Connors argues that he had multiple sources of additional legitimate income, and that the district court ignored the evidence he submitted earlier in the litiga-tion. We find that Connors waived this argument by failing to raise it properly before the district court at summary judgment, and we therefore affirm the district court's granting of summary judgment on the income deficiency theory.

In his response to the government's motion for sum-mary judgment, Connors argued only that the govern-

ment had waived this theory because of a typo in the complaint. He continues to press this point on appeal. In its complaint, the government inadvertently (as was obvious from the fact that it was bringing a civil forfeiture action) wrote that Connors's income exceeded his expenditures during the relevant years rather than that his expenditures greatly exceed his reported income. The district court noted that the government could correct the error by amending its complaint under Federal Rule of Civil Procedure 15(b). Connors argues that because the government never moved to amend its complaint and correct the typo, the government has waived its proceeds theory.

Connors's objection notwithstanding, he clearly understood the thrust of the government's proceeds argument and attempted, albeit inadequately, to mount a defense. Under these circumstances, we find that it was unnecessary for the government to amend its complaint. *Cf. Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 877-79 (7th Cir. 2005). In any event, Connors did not appeal, and we do not upset, the district court's conclusion that the government can amend its complaint to correct the typos, which it may still do even after judgment has been entered. *See* Fed. R. Civ. P. 15(b)(2).

Aside from his argument that the government waived the income deficiency theory, in his summary judgment response, Connors did not so much as mention any additional sources of income, much less cite to any competent evidence of that income. If Connors had evidence he wished the district court to consider, the proper thing

would have been to attach the evidence to his response to the government's motion for summary judgment. Having failed to do so when he had the chance, Connors waived the argument and we decline to consider the merits of it on appeal.

Connors argues that he raised the issue in his response to the government's Rule 56.1 statement. A response to a Local Rule 56.1 statement should be concise and note disagreements with the moving party's statement by making "specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3). Rather than comply with the local rule, Connors—who is an attorney, even though he proceeded pro se below—submitted a meandering 35-page response virtually bereft of citations to evidence. He also failed to restrict his response to the facts, wasting significant ink instead on rehashing legal arguments long since put to rest and attempting to raise new arguments. Buried on page 33 of his response, Connors refers to his exhibits 8 and 9, which are an inadmissible "summary" of Connors's income and available funds from 1996 through 1998, and a copy of two pages of his reply on his unsuccessful motion to dismiss, respectively. In the copied pages of his reply regarding the motion to dismiss, Connors attached copies of bank statements that he alleged showed additional legitimate sources of income. He did not, however, attach those bank statements to his response to the government's motion for summary judgment or specifically reference the statements in his response to the government's Rule 56.1 statement. He did include as his fourth affirmative

defense a statement that he had other sources of income, although he failed again to include a reference to any evidence supporting that defense.

At summary judgment, unfortunately for Connors, saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it was not the district court's job to sift through the record and make Connors's case for him. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). We find his attempts to raise the issue of additional legitimate income inadequate, and therefore affirm the district court's granting of summary judgment on the government's income deficiency or proceeds theory. Having affirmed the district court's granting of summary judgment on this theory, we find it unnecessary to address the district court's granting of summary judgment on the government's facilitation claim.

### III. CONCLUSION

We AFFIRM the district court's denial of the motion to dismiss and grant of summary judgment. The property remains forfeited to the United States.